NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

INTERNATIONAL CREDIT SERVICE, a Division of Lucas County Credit Bureau, Inc., Respondent.

No. 79–1212.

United States Court of Appeals, Sixth Circuit.

Jan. 6, 1981.

gan, sitting by designation.

Elliott Moore, Allison Brown, Deputy Associate Gen. Counsel, N.L.R.B., Stephen Mayer, Washington, D.C., Bernard Levine, Director, Region 8, N.L.R.B., Cleveland, Ohio, Allison Brown, Washington, D.C., for petitioner.

Frederick R. Post, Lubisky & Post, Toledo, Ohio, for respondent.

Before LIVELY and MARTIN, Circuit Judges, and MARKEY, Judge.*

## ORDER

This case is before the Court on the application of the National Labor Relations Board for enforcement of its order issued against International Credit Service, a division of Lucas County Credit Bureau, Inc., of Toledo, Ohio on February 12, 1979, and reported at 240 N.L.R.B. No. 102. The Board found the company violated Section 8(a)(5) and (1) of the Act by refusing to execute the collective bargaining agreement, by unilaterally implementing employee wage increases, by engaging in direct dealing with the employees, and by refusing to furnish within a reasonable time wage information requested by the Union. The order requires the company to cease and desist from engaging in those unfair labor practices, and from in any way interfering with, restraining, or coercing the employees in the exercise of the rights under the Act. Affirmatively the company was ordered to execute the written agreement.

The NLRB certified the Toledo Printing Pressman and Assistants' Union No. 55, an affiliate of the International Printing & Graphic Communications Union, AFL–CIO in March, 1977. Negotiations on a collective bargaining contract began shortly thereafter. The Union's chief negotiator was Fred Larson, an International Representative. The employer was represented by the President of the company, J. W. Orrin. The record establishes that at the initial bargaining session Orrin acknowledged his authority to represent the company. He stated he chose not to have his attorney present. Orrin testified and claims here he made it clear that negotiations were not to be considered final until his attorney had reviewed the contract. Mr. Larson testified that Orrin merely requested he be allowed to submit the final agreement to his attorney at the conclusion of the bargaining sessions.

After the negotiations were completed and Orrin was in possession of the contract and a set of office rules in the form of a separate document, incorporated by reference in the contract as requested by Orrin upon learning the office rules had been left out of the contract, the papers were sent to the attorney. The union members became impatient with the delay in signing the documents and threatened to strike. Orrin expressed concern over the contents of certain articles in the contract, stating some contained substantive terms not agreed upon during the negotiations.

Larson suggested wage increases be implemented to avert the strike, subject to approval by the employees. The employees rejected the wage increase. Orrin initiated the wage increase without employee approval. The employees went on strike. Orrin continued to refuse to sign the contract and the office rules. A meeting was held and the contract was reviewed point by point. Orrin continued to insist discrepancies existed and refused to sign.

▮▮▮ The existence of an agreement is a question of fact, and it is the Board's

---

* Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

function to determine whether the employer refuses to sign and honor the bargain produced by the negotiations. *N.L.R.B. v. Strong*, 393 U.S. 357, 361, 89 S.Ct. 541, 544, 21 L.Ed.2d 546 (1969); *N.L.R.B. v. Truckdrivers Union No. 100*, 532 F.2d 569, 571 (6th Cir. 1976), *cert. denied*, 429 U.S. 859, 97 S.Ct. 160, 50 L.Ed.2d 137 (1977); *Arco Electric Company v. N.L.R.B.*, 618 F.2d 698, 699 (10th Cir. 1980). We should enforce the Board's order if we find substantial evidence supports the finding that an agreement was reached. *Adams Potato Chips, Inc. v. N.L.R.B.*, 430 F.2d 90 (6th Cir. 1970). Upon careful review of the record, we do not believe that a final agreement was ever reached by the parties in this case. Discrepancies between notations made by Orrin and the agreement in its final form are too apparent to satisfy us that certain substantive terms in the contract are reflective of agreements made during the bargaining session. However, it is our further conclusion that the company did engage in the other unfair labor practices cited. We therefore deny enforcement of the order insofar as it directs the company to execute the written agreement, but enforce it in all other respects.